# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER A. VILLA, | ) No. CV 17-6332-PLA |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## I.
## PROCEEDINGS

Plaintiff filed this action on August 28, 2017, seeking review of the Commissioner's[1] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on September 12, 2017, and October 5, 2017. Pursuant to the Court's

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

Order, the parties filed a Joint Submission (alternatively "JS") on September 10, 2018, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

**II.**

**BACKGROUND**

Plaintiff was born on March 1, 1958. [Administrative Record ("AR") at 28, 117.] He has past relevant work experience as a tractor-trailer driver. [AR at 28, 512.]

On December 30, 2013, plaintiff filed an application for a period of disability and DIB alleging that he has been unable to work since August 2, 2013. [AR at 28, 115.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 95-96.] A hearing was held on August 6, 2015, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 489-519.] A vocational expert ("VE") also testified. [AR at 511-18.] On December 23, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from August 2, 2013, the alleged onset date, through December 23, 2015, the date of the decision. [AR at 13-30.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 113-14.] When the Appeals Council denied plaintiff's request for review on July 6, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A. THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the

second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 2, 2013, the alleged onset date.[2] [AR at 15.] At step two, the ALJ concluded that plaintiff has the severe impairments of disc disease of the lumbar spine; disc disease of the cervical spine; borderline obesity; optic neuropathy, bilateral; and glaucoma, bilateral. [AR at 16.] At step three,

---

[2]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2018. [AR at 15.]

the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 19.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in 20 C.F.R. § 404.1567(c),[4] as follows:

> [C]an lift and carry 50 pounds occasionally and 25 pounds frequently; can stand and walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; and is limited in near acuity, far acuity, depth perception, and field of vision in the left eye.

[AR at 23.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform his past relevant work as a tractor-trailer driver. [AR at 28, 512-13.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "cleaner, industrial" (Dictionary of Occupational Titles ("DOT") No. 381.687-018), and as a "kitchen helper" (DOT No. 318.687-010). [AR at 29, 513.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of August 2, 2013, through December 23, 2015, the date of the decision. [AR at 30.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he rejected plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

5

**A.   SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 7.]

The ALJ summarized plaintiff's testimony as follows:

> [H]e alleges that he is disabled as of August 2, 2013 due to the following: gout, lower back/neck pain, blurred vision, and depression. He has pain in his back, neck and elbow. The pain is every day lasting about 30 minutes to all day. He also has fatigue twice or more a day that lasts 30 minutes. Pain is caused by sitting, sleeping and standing. He can stand/walk 20 to 30 minutes before pain occurs and he can sit for about one hour. [¶] [He] reports that his conditions affect the following abilities: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks. He can lift 10 pounds. He can walk for short distances. He indicates he can walk two blocks before needing to stop and rest for 10 minutes. He can pay attention for 30 minutes. He is able to take care of his personal needs but at a slower rate. He takes the following medications: combigan, lumigan, allopurinol, Tylenol, and advil. He has also had cortisone shots. Further, he wears glasses/contact lenses. He testified that he can lift 25 pounds. He can sit two hours. He can stand a half an hour to an hour. He also has issues with near and far sight. He could read the Social Security sign in the hearing room, two inch lettering about 15 feet from [plaintiff]. He can read a newspaper with a magnifying glass. He wears contact lenses but his prescription is about two or three years old.

[AR at 23-24.]

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (citing Garrison, 759 F.3d at 1014-15).[5] "First, the ALJ must determine whether the

---

[5] On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit in Trevizo specifically noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically
(continued...)

claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of his symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. During this inquiry, the ALJ may use "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)). The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately explained or unexplained failure to pursue or follow treatment. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering [see generally AR at 23-28], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina, 674 F.3d at 1112); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the

---

[5](...continued)
determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p). SSR 16-3p shall apply on remand.

adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, in discounting plaintiff's testimony, the ALJ found the following:

> There is substantial evidence in the record that supports the [RFC]. For example, the opinions of the independent consultative examiner and the DDS medical consultant support the RFC and [plaintiff's] ability to work. These opinions also undermine the credibility of his allegations, including the severity of his impairments and their limiting effects. In addition, the medical records document slight spine and visual issues but also a history of conservative, routine treatment and many normal exam findings. Furthermore, there are many ADLs [activities of daily living] including cooking, shopping and reading.

[AR at 24.] In addition, the ALJ noted the following: (1) the field office interviewer's observations "support the RFC finding . . . and undermine the credibility of [plaintiff's] allegations"; (2) plaintiff's daily activities "support the RFC finding" and "undermine the credibility of [plaintiff's] allegations"; (3) plaintiff's work history "undermines the credibility of his allegations, including the severity of his impairments and their limiting effects"; and (4) plaintiff's "demeanor and testimony at the hearing supports the RFC and undermines the credibility of his allegations, including the severity and limiting effects of his impairments." [AR at 27.]

### 1.    Objective Evidence

The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision." [AR at 24.] The ALJ then generally summarized the medical evidence beginning with August 2, 2013, when plaintiff was involved in a work-related injury while driving his truck. [AR at 25 (noting that plaintiff's truck accidently veered off the road, tipped, and rolled over onto its side, and that plaintiff, who was not wearing a seatbelt, was thrown to the front passenger-side door).] The ALJ also discussed various reports from treating providers, including plaintiff's Workers' Compensation

physicians, the 2014 reports of the internal medicine and ophthalmology consultants, notes from "February 2014 and 2015 glaucoma consultations," and "additional treating ophthalmology records" presented at the hearing. [AR at 24-28 (citations omitted).]

Plaintiff generally argues that the ALJ answered the wrong question "in articulating that the degree of limitation established by the objective medical evidence does not support [plaintiff's] descriptions; rather, once the presence of a severe medical impairment likely to produce subjective limitations is established (as in this case), the true question is whether there is [sic] any clear and convincing reasons for rejecting [plaintiff's] testimony." [JS at 9 (citations omitted).] He also argues that the ALJ failed to articulate *any* rationale sufficient to demonstrate that plaintiff was less than credible. [JS at 10.]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted); see Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Here, the ALJ stated his conclusion that plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was "not entirely credible for the reasons explained" in the decision, and noted that there is "substantial evidence in the record that supports the [RFC]." [AR at 24.] He referred to, for example, "the opinions of the independent consultative examiner and the DDS medical consultant," as supportive of the RFC and plaintiff's ability to work,

and further generally stated that "[t]hese opinions also undermine the credibility of [plaintiff's] allegations, including the severity of his impairments and their limiting effects." [Id.]

However, to be legally sufficient, the "ALJ must identify the testimony that [is being discounted], and *specify* 'what evidence undermines the claimant's complaints.'" Treichler, 775 F.3d at 1103 (citation omitted) (emphasis added); Brown-Hunter, 806 F.3d at 493. Although he summarized plaintiff's testimony, the ALJ did not then identify the testimony he was discounting *and* "link that testimony to the particular parts of the record" supporting his determination. Brown-Hunter, 806 F.3d at 494. Indeed, the ALJ's running narrative regarding plaintiff's medical records, while thorough, did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103; Burrell, 775 F.3d at 1138).

In this case, the ALJ referenced "normal exam findings" on the date of the accident, "except subjective complaints o[f] non-radiating back pain." [AR at 25.] He then summarized workers' compensation records, including clinical testing, from August 2013 through February 2014 that reported "multilevel protrusions in the lumbar spine," along with spinal tenderness, elbow pain, decreased range of motion of the lumbar spine, and positive straight leg raising test results. [AR at 25 (citations omitted).] The ALJ further noted that the January 3, 2014, treatment note indicated improvement in plaintiff's low back pain and right elbow pain. [AR at 25 (citing AR at 261).] The ALJ also reviewed the August 1, 2014, report of the internal medicine consultative examiner, John Godes, M.D. [AR at 24 (citing AR at 278-83).] The ALJ noted Dr. Godes' findings of reduced neck and back forward flexion; a negative straight leg raising test (at 30 degrees); full range of motion of the elbows without tenderness; normal motor strength; normal gait; visual acuity of "20/50, without glasses, both eyes"; and diagnoses of "musculoligamentous strain/sprain of the lumbar

area, musculoligamentous strain/sprain of the cervical area, and contusion of the elbows." [Id. (citing AR at 283).] The ALJ also observed that this report "reveal[s] many normal exam findings, including normal neurological findings and normal gait." [AR at 25 (citing AR at 278-83).] With respect to the August 15, 2014, ophthalmology consultative examination conducted by David Paikal, M.D., a Board Certified Ophthalmologist, the ALJ noted that plaintiff's visual acuity "was measured to be 20/50 in the right eye, and 20/200 in the left eye, with and without correction." [AR at 24 (citing AR at 288).] Dr. Paikal diagnosed "optic neuropathy, left eye worse than right, and early cataracts, both eyes." [Id. (citing AR at 288).] The ALJ also referenced "February 2014 and 2015 glaucoma consultations," reflecting that plaintiff's "visual acuity in 2012 was 20/50 with the right eye and 20/20 with the left,[6] and, in 2014, the right eye is 20/50 but the left eye is 20/200." [AR at 26 (citing AR at 224-28, 480-88).]

With respect to plaintiff's vision test results, however, the ALJ's statement that Dr. Godes measured plaintiff's visual acuity at 20/50 without glasses in both eyes, does not completely (or accurately) reflect Dr. Godes' report. Dr. Godes, a Board Certified Internist, appears to have found that plaintiff's overall visual acuity *with contact lenses* (not "without glasses" as the ALJ reported) was 20/50 with both eyes, but 20/70 on the right and 20/100 on the left. [AR at 280; see also AR at 284.] Pinhole correction was also determined to be 20/70 on the right and 20/100 on the left. [AR at 280, 284.] Then, two weeks later, Dr. Paikal, noting that plaintiff was "unable to remove his eye contact lenses," measured plaintiff's right eye visual acuity, best possible correction, as 20/50 (distance and near), and his left eye visual acuity, best possible correction, as 20/200 (distance and near). [AR at 288.] Another examination earlier that year, on February 27, 2014, measured plaintiff's visual acuity at 20/50 in the right eye (corrected) and 20/200 in the left eye (corrected). [AR at 224.]

Similarly, the ALJ's summary of Dr. Godes' August 1, 2014, findings with respect to

---

[6] However, with respect to the 2012 examination referred to by the ALJ, the test results are not legible enough to determine that plaintiff at that time had 20/50 vision in the right eye and 20/20 with the left. [AR at 227.] In fact, the left eye measurement could just as easily be deciphered as 20/200 given the virtually illegible handwriting and the fact that the right side of the page was partially cut off. [Id.]

plaintiff's other physical conditions was also incomplete. In addition to the more general findings mentioned by the ALJ (reduced neck and back forward flexion and a negative straight leg raising test), with respect to plaintiff's neck evaluation, Dr. Godes also noted "tenderness of the lower cervical spine and paravertebral and trapezius areas, bilaterally"; left and right lateral flexion were both 30/45 degrees; forward flexion was 30/50 degrees; extension was 10/60 degrees; and left and right rotation of the neck were both 30/80 degrees. [AR at 280.] His assessment of plaintiff's back reflected tenderness of the lower lumbar spine and paravertebral areas, bilaterally; forward flexion was 30/90 degrees; extension was 10/25 degrees; left and right lateral flexion were both 10/25 degrees; and the "[s]traight leg raising test is to 30 degrees, bilaterally and [was] negative with no production of sciatic pain." [AR at 281.] The negative straight leg raising test result, where plaintiff's legs seem to have been raised to only "30 degrees" without production of sciatic pain, would seem to be based on an incomplete test. See Miller v. Astrue, 2010 WL 4942814, at *1 n.2 (E.D. Cal. Nov. 30, 2010) (the straight leg raising test is administered during a physical examination to determine whether a patient with low back pain has an underlying herniated disc and is positive if the patient experiences pain down the back of the leg when the leg is raised.).[7] The ALJ neglected to mention Dr. Godes' observations of plaintiff's condition that did not support the ALJ's conclusion, thus appearing to cherry-pick from the record for "sound bites" to support his RFC assessment as well as his ultimate conclusion that plaintiff is not disabled. See Scott v. Astrue, 647 F.3d 734, 739-40 (noting that an ALJ is not permitted to "'cherry-pick' from . . . mixed results to support a denial of benefits").

In any event, the more critical failure here is that the ALJ failed to link plaintiff's testimony

---

[7] See also "Straight Leg Raise Test," available online at www.physiopedia.com/Straight_ Leg_Raise_Test (last visited September 25, 2018) ("Neurologic pain which is reproduced in the leg and low back between 30-70 degrees of hip flexion is a positive result of lumbar disc herniation at the L4-S1 nerve roots. . . . Pain at less than 30 degrees of hip flexion might indicate acute spondylo[l]i[s]thesis, gluteal abscess, disc protrusion or extrusion, tumor of the buttock, an acute dural inflammation, a malingering patient, or the sign of the buttock. . . . Pain at greater than 70 degrees of hip flexion might indicate tightness of the hamstrings, gluteus maximus, hip capsule, or pathology of the hip or sacroiliac joints."); see also Garcia v. Colvin, 2014 WL 3810382, at *6 n.4 (C.D. Cal. Aug. 1, 2014).

with any of the summarized medical records. In fact, the ALJ's repeated assertion that the findings of the various physicians were "largely consistent with" the RFC assigned (as well as his assertion that plaintiff's daily activities and demeanor at the hearing "support the RFC" and "undermine the credibility of [plaintiff's] allegations") appears to be the sort of "cart before the horse" reasoning that the Ninth Circuit has rejected. Laborin, 867 F.3d at 1153. The use of this language implies that the ALJ arrived at an RFC determination for medium work with various limitations and *then* found that certain medical evidence and/or certain of plaintiff's subjective symptom testimony supports that determination, rather than conducting a "thorough discussion and analysis of the objective medical and other evidence, *including the individual's complaints of pain and other symptoms*" and taking that information "into account *when determining* the RFC." Id. (citing Garrison, 759 F.3d at 1011) (emphases added).

Thus, the ALJ's determination that plaintiff's subjective symptom testimony was not supported by the objective medical evidence was not a specific, clear and convincing reason supported by substantial evidence for discounting plaintiff's subjective symptom testimony. Even assuming this was a specific, clear and convincing reason for discounting plaintiff's testimony, the ALJ's determination to discount plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discrediting plaintiff. Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883). As seen below, those other grounds are insufficient as well.

### 2. Conservative Treatment History

Although not mentioned by the parties, the ALJ also discounted plaintiff's allegations because of his "history of conservative, routine treatment." [AR at 24.]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of

13

anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

Here, however, the ALJ failed to articulate what, if any, treatment was currently recommended or available for plaintiff's severe impairments of disc disease of the lumbar and cervical spine, optic neuropathy, and glaucoma, of which he failed to avail himself. He pointed to no evidence in the record that anything other than medication, cortisone shots, and physical therapy had been recommended for plaintiff by a physician or was warranted for his conditions. Additionally, the ALJ failed to point to anything in the record to show that any specific treatment, other than the medication plaintiff was receiving, is a standard method for treating individuals with the type of pain or other limitations caused by plaintiff's physical impairments.

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 3. The Observations of the Field Officer and the ALJ

The ALJ stated that in January 2014, "interviewer A. Leon interviewed [plaintiff] and indicated that he did not observe or perceive that [plaintiff] had any difficulty with any functional abilities." [AR at 27 (citing AR at 127-28).] However, the interviewer noted that the interview was conducted by "teleclaim." [AR at 127.] Thus, other than plaintiff's verbal abilities, the field officer did not even have an opportunity to "observe or perceive" anything about plaintiff physically or functionally. This was not a specific, clear and convincing reason to discount plaintiff's testimony.

The ALJ also stated that plaintiff's "demeanor and testimony at the hearing supports the RFC and undermines the credibility of his allegations," as he was "lucid and responsive to questioning"; his answers "demonstrated good memory recall and logical thinking" and were relevant and responsive; his demeanor and testimony "reflected good social interaction and concentration, persistence and pace"; and he "was cooperative, voluntarily offered information, and seemed at ease with the hearing process." [AR at 27.]

Although they may not form the sole basis for discrediting a claimant's subjective symptom testimony, an ALJ may properly consider his own observations at the hearing as part of the subjective symptom testimony analysis. Orn v. Astrue, 495 F.3d 625, 639-40 (ALJ's personal observations may be used in "the overall evaluation of the credibility of the individual's statements"); Nyman v. Heckler, 779 F.2d 528, 531 n.1 (9th Cir. 1985) ("The ALJ's observation of [the claimant]'s demeanor was relevant to his credibility and was not offered or taken as a substitute for medical diagnosis."). However, these observations may not form the sole basis for discrediting that testimony. Orn, 495 F.3d at 639-40 (citation omitted).

Here, the ALJ's description of plaintiff's "demeanor and testimony" at the hearing reflects primarily on plaintiff's mental capabilities and/or to his alleged impairment of mood disorder that the ALJ found (and plaintiff does not dispute) was nonsevere. Plaintiff's demeanor and testimony as described by the ALJ has no obvious connection to plaintiff's subjective symptom testimony regarding his physical impairments and resulting limitations. Thus, this was not a specific, clear and convincing reason to discount plaintiff's testimony.

### 4. Daily Activities

The ALJ found that plaintiff's "activities of daily living also support the RFC finding above and undermine the credibility of [plaintiff's] allegations." [AR at 27.] He described plaintiff's daily activities, stating the following: no problems with personal care; prepares three meals daily; goes outside five to six times a day; drives and is able to go out alone; goes shopping; handles his own finances; spends time with others two to three times a week talking on the phone and playing board games; reads books, uses the computer and watches television; does not need reminders to take care of his personal needs, take medicine, or go places; lives with his sister; wakes up at 7 a.m.; gets along with his family members; has close friends; and has no problems with neighbors. [Id.]

An ALJ may discredit testimony when plaintiff reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for

discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Trevizo, 871 F.3d at 682 (citing Ghanim, 763 F.3d at 1165).

Plaintiff contends that his description of his activity level "is far short of what is needed to demonstrate the capacity to perform work activity on a sustained basis." [JS at 11.] He states that nothing in his testimony "provides any indication that he is capable of performing anything other than a few basic daily activities and certainly not what is required of substantial gainful work activity." [JS at 10.] He also notes that the ALJ did not describe how the activities "are inconsistent with specific symptom claims" made by plaintiff. [AR at 11.]

Here, the ALJ specifically identified the daily activities that he found "support the RFC finding . . . and undermine the credibility" of plaintiff's allegations. [AR at 27.] However, the amount of involvement plaintiff described in these activities was minimal. For instance, he testified at the hearing and/or in his Adult Function Report that his driving is "[v]ery, very limited" because it is "hard to see the lanes and distinguish things"; he uses a magnifying glass to read the paper; bending and stooping occasionally cause severe pain; he can still lift 25 pounds only if he is "very careful"; he cooks three times a day, which takes ten to thirty minutes each time; he shops only once or twice a week for about thirty minutes; he spends time with others two to three times a week; and he can sit about two hours and stand for about half an hour to an hour. [AR at 148-54, 500-10.] The ALJ does not explain how plaintiff's level of activity describes a person capable of engaging in basic work activity at the medium exertional level, or how it is otherwise incompatible with the severity of symptoms alleged by plaintiff.[8] [AR at 33.]

---

[8] "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as []he would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 5. Plaintiff's Work History

The ALJ stated that plaintiff's "work history undermines the credibility of his allegations, including the severity of his impairments and their limiting effects." [AR at 27.] The ALJ explained that plaintiff stated in a disability report that he had been fired, and his earnings records "indicate he received unemployment insurance benefits after the alleged onset date of disability," in the fourth quarter of 2013. [Id. (citing AR at 132).] He noted that in order "to receive unemployment insurance benefits one certifies that he is able to work and is looking for work." [Id.]

The ALJ's conclusory statement that plaintiff reported he had been fired does not provide any kind of explanation as to how that statement somehow undermines plaintiff's subjective symptom statements or their limiting effects. To the extent the ALJ is implying that this statement is inconsistent with plaintiff's other statement that he stopped working as a result of his condition, a review of the disability report referred to by the ALJ reflects that plaintiff admitted he stopped working on August 2, 2013, because of his condition *and* because "of other reasons," which he explained was because he had been "[f]ired because of accident." [AR at 132.] The record also reflects, however, that as plaintiff explained to his workers' compensation physician, he could not resume his job duties as a truck driver because his employer notified him "that despite receiving reimbursement from insurance carrier for new tr[u]ck, his employer does not plan to purchase another vehicle or replace that vehicle." [See AR at 404.] That plaintiff admitted that he stopped work because of his physical condition *and* because he did not have a job to return to and therefore may have considered that he had been "fired," does not undermine his credibility; in fact, it tends to show that plaintiff was attempting to be forthright and complete in his responses.

This was not a specific, clear and convincing reason to discount plaintiff's subjective symptom testimony.

Likewise, the fact that plaintiff applied for and received unemployment insurance benefits for some period of time, does not constitute a specific, clear and convincing reason to discount

plaintiff's subjective symptom testimony. The Court acknowledges that a claimant's receipt of unemployment benefits could be a legally sufficient reason to find a claimant not credible if the claimant considered himself capable of work and held himself out as available for work. See Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (that the claimant received unemployment insurance benefits was one of several reasons given by the ALJ for finding plaintiff not credible); but see Webb v. Barnhart, 433 F.3d 683, 687-88 (9th Cir. 2005) (rejecting as a basis for finding a claimant not credible that the claimant sought employment during the relevant period as it shows the claimant "was doing his utmost, in spite of his health, to support himself"). However, a claimant's receipt of unemployment benefits does not *necessarily* constitute a legally sufficient reason for an adverse credibility determination when the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work." Carmickle v. Comm'r, 533 F.3d 1155, 1161-62 (9th Cir. 2008). The Ninth Circuit recently stated that "*continued* receipt" of unemployment benefits casts doubt on a claim of disability, but the receipt of some unemployment benefits, followed by the subsequent refusal of unemployment benefits, actually supports a claim of disability. Ghanim, 763 F.3d at 1165 (emphasis added).

Here, although the record contains evidence that plaintiff received unemployment benefits after the alleged onset date, in the third and fourth quarter of 2013 [see AR at 122-23 (plaintiff received $570 in the third quarter and $376 in the fourth quarter)], the record does not establish whether plaintiff claimed he was available for full-time or part-time work, and the ALJ never asked him any questions about this at the hearing.[9] In addition, the record does not show whether plaintiff ever declined unemployment benefits. Accordingly, the Court finds that the evidence in the record that plaintiff was receiving unemployment benefits for a period of time in 2013 did not give rise to a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See, e.g., Lind v. Colvin, 2015 WL 1863313, at *4 (C.D. Cal. Apr. 23, 2015); Plummer v. Colvin, 2014 WL 7150682, at *16 (D. Az. Dec. 16, 2014) (claimant's

---

[9] In California, an individual can receive unemployment benefits if he is available for part-time work. Cal. Unemp. Ins. Code § 1253.8.

18

receipt of unemployment benefits was not clear and convincing reason for ALJ's adverse credibility determination where the record did not contain the unemployment benefits application or establish the manner in which claimant held herself out as available for work in completing any such application); Wood v. Colvin, 2014 WL 4407719, at *9 (E.D. Wash. Sept. 8, 2014) (same, where record contained no certification by claimant that he was physically and mentally able to work full-time); Miller v. Colvin, 2014 WL 1873276, at *4 (C.D. Cal. May 9, 2014) (same, where there was no indication whether claimant based her claim for unemployment benefits on full-time or part-time work); Ellis v. Astrue, 2011 WL 5025839, at *5-6 (D. Or. Oct. 20, 2011) (same, where record did not contain claimant's unemployment benefits application). Accordingly, this was not a specific, clear and convincing reason to discount plaintiff's subjective symptom statements.

**B.    CONCLUSION**

Based on the foregoing, the ALJ's subjective symptom testimony determination was not "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit his subjective symptom testimony regarding his physical limitations. Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). Remand is warranted on this issue.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination

can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. Because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. The ALJ shall then reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[10]

## VII.
## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 26, 2018

                                          PAUL L. ABRAMS
                         UNITED STATES MAGISTRATE JUDGE

---

[10] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.